TODD A. PLIMPTON, ESQ.
Bar No. 4363
**BELANGER AND PLIMPTON**
P.O. Box 59/ 1135 Central Ave.
Lovelock NV, 89419

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PATRICK IRWIN, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

WASHOE COUNTY, NEVADA.

    Defendants.

CASE NO. 3:18-CV-229

**FLSA COLLECTIVE ACTION COMPLAINT**

    **COMES NOW** PATRICK IRWIN., (hereinafter "Irwin") on behalf of himself and others similarly situated (collectively "Firefighters") by and through his attorneys, **TODD A. PLIMPTON, ESQ.**, of the law firm of **BELANGER & PLIMPTON**, bring this lawsuit against WASHOE COUNTY, NEVADA (herein after "DEFENDENTS") for unpaid overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. ss 201 *et seq.* (hereinafter "FLSA"). In support, IRWIN hereby complains and alleges as follows:

## INTRODUCTION

1. Washoe County employed Irwin and other similarly situated Firefighters to work 24-hour shifts out of the fire station in Gerlach, Nevada.

2. Washoe County did not pay Irwin and the other similarly situated Firefighters beyond 8-10 hours per 24-hour shift unless they actually responded to an emergency call.

3. Washoe County failed to pay Irwin and the other similarly situated firefighters for all hours worked over forty (40) in a week.

1

4. Irwin seeks unpaid wages for all time that he worked for Washoe County. (See Affavidavit attached hereto, and by this reference made a part here of, as Exhibit "A" in support of the Complaint)

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331.

6. Venue is proper in this Court as all Firefighters and Defendant reside and transacted business within the Northern Division of the District of Nevada.

## PARTIES

7. Defendant Washoe County is a public agency.

8. Defendant is an enterprise engaged in commerce as defined under 29 U.S.C. § 203(s)(1)(C).

9. At all relevant times Washoe County employed Irwin and the other Firefighters to provide fire protection and emergency medical services out of the Gerlach, Nevada fire station.

10. At all relevant times, Irwin and the other Firefighters were subject to the payroll and work policies of Defendant, Washoe County, Nevada.

11. At all relevant times, Irwin and the other Firefighters resided within the Northern Division of the U.S. District Court of Nevada.

## FACTS

12. Washoe County employed Irwin and other Firefighters to provide fire and emergency medical service protection on 24-hour shifts.

13. Irwin typically worked 86-120 hours each week.

14. The other Firefighters also worked over 40 hours each week.

15. Washoe County paid Irwin at a straight-time rate of $36.05/hr. for 40 hours a week.

2

16. Washoe County required Irwin and the other Firefighters to volunteer the time outside of their 8-hour work days during 5 day weeks and outside 10 hour work days during 4 day weeks.

17. Washoe County did not compensate Irwin or the other Firefighters for the time it required them to volunteer.

18. Irwin's supervisor, Aaron Kenneston, knew that Irwin and the other Firefighters worked 8-10 hours a day and volunteered the rest of their 24-hour shift.

19. During the day, Irwin and the other Firefighters inspected and maintained emergency vehicles, inventoried supplies, cleaned and maintained the station and grounds, answered fire department phones, filled out station logbook, worked on recruiting firefighters and drafting protocols, prepared for classes and trained.

20. At all times, Irwin and the other Firefighter waited for, responded to, and critiqued emergency calls.

21. At night, Irwin and the other Firefighters performed the following duties at the fire fighter's quarters located in a hotel room near the fire station: waiting for and responding to and critiquing calls, completing logbook, answering phones, preparing for classes, drafting (communication, regular duty, and EMS) protocols, and updating maps.

22. After Washoe County relocated the firefighter quarters to a house approximately 300 yards from the Gerlach station, Irwin and the other Firefighters also had to perform landscaping duties and housekeeping duties.

23. At all times, Washoe County required Irwin and the other firefighters to respond enroute from the station, in uniform, within 3-5 minutes of an alarm.

24. Irwin and the Firefighters were required to respond to every emergency call in uniform.

25. Neither Irwin nor the other Firefighters on shift could refuse to respond to an emergency call.

26. The 3-5-minute response requirement precluded Irwin and other Firefighters from socializing with family and friends or performing household chores as Irwin lived 120 miles away from Gerlach and the other Firefighters lived approximately 90 miles from Gerlach.

27. Neither Irwin nor the other Firefighters could work for another employer while on duty.

28. If Irwin or the other Firefighters left the quarters, they had to take an ambulance so that they could respond to an emergency call.

29. Washoe County did not allow Irwin to take a vacation day or sick day while he worked for Washoe County.

30. Washoe County only permitted Irwin to trade 24-hour duty shifts with Rich Walsh if they were not working the same shift.

31. Washoe County required Irwin and the other Firefighters to remain on-duty during their 24-hour shifts ready at all times to respond to an emergency.

32. Washoe County hired Irwin and the other Firefighters to wait for calls during their entire 24-hour shifts and to be ready to respond the instant they were notified of a threat to the people in their response area.

## COLLECTIVE ACTION ALLEGATIONS

33. This action is maintainable as a FLSA collective action under 29 U.S.C. 216(b).

34. Irwin brings this action on behalf of himself and all others similarly situated firefighters that worked over fifty-three (53) hours per workweek for Washoe County out of the Gerlach station without the overtime compensation for all hours worked as required under the FLSA.

35. Common issues of law and fact affect the claims of Irwin and the other Firefighters.

36. Based on information and belief, Washoe County will argue common defenses against the claims of Irwin and the other Firefighters.

4

37. A collective action is the most efficient means to adjudicate the claims of Irwin and the other Firefighters.

38. Irwin seeks collective class certification, pursuant to 29 U.S.C. 216(b), for all firefighters that Washoe County required to be on-duty more than fifty-three (53) hours in any week that were not paid for all hours they were required to be on shift.

//

//

//

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Certification of this action as a FLSA collective action under 29 U.S.C. § 216(b);

(b) A declaratory judgment that Plaintiff and the Firefighters performed unpaid work for Defendant under the FLSA;

(c) A declaratory judgment that Defendants violated the maximum hours provisions of the FLSA, 29 U.S.C. § 207;

(d) A declaratory judgment that Defendants' FLSA violations were willful;

(e) An award to plaintiffs of an amount equal to the unpaid overtime wages to be determined at trial;

(f) An award of an equal amount as liquidated damages shown to be owed under the FLSA;

(g) An award to Plaintiffs of reasonable costs and attorney fees; and

(h) An award of such other relief as this Court deems just.

Submitted on behalf of Plaintiffs

PATRICK IRWIN

BELANGER & PLIMPTON

/s/ Todd A. Plimpton

TODD A. PLIMPTON, ESQ.

BRIAN D. MASSATT
LAW OFFICE OF BRIAN D. MASSAT
8824 Glenshire Street
Tinley Park, Illinois
(815) 685-4192
Will comply with LR IA 11-2 within 45 days.

EXHIBIT "A"

**CASE NO.:**

THIS DOCUMENT DOES NOT CONTAIN THE
SOCIAL SECURITY NUMBER OF ANY PERSON.

PATRICK IRWIN,

        Plaintiffs,

vs.

COUNTY OF WASHOE,

        Defendants.

**AFFIDAVIT OF PATRICK IRWIN
(SETTLEMENT PURPOSES)**

STATE OF NEVADA    )
                             :ss.
COUNTY OF PERSHING  )

1. From July 2016 to July 2017, Washoe County employed me, PATRICK IRWIN, to provide TWENTY-FOUR (24) HOUR/ THREE HUNDRED AND SIXTY-FIVE (365) DAYS A YEAR of fire and emergency medical service protection out of Gerlach, Nevada.

2. On the 31st day of December, 2015, after TWO (2) weeks notice, the volunteer firefighters who provided the fire and emergency medical service protection for Gerlach were disbanded.

3. Prior to my employment, the Washoe County Emergency Manager, AARON KENNESTON, told a Community Action Board that he would create a TWENTY-FOUR (24) HOUR/ THREE HUNDRED AND SIXTY-FIVE (365) DAYS A YEAR, Fire Department in Gerlach that would also provide EMS services.

BELANGER & PLIMPTON
1135 Central Ave./Box 59
Lovelock, NV 89419
(775) 273-2631 FAX (775) 273-2649

1

4. Washoe County would temporarily place full time firefighters from Truckee Meadows in the Gerlach Fire Department on TWENTY-FOUR (24) HOUR shifts to provide fire and emergency medical service protection.

5. These firefighters responded to emergencies from the Fire Department in Gerlach within THREE (3) to FIVE (5) MINUTES of an alarm.

6. As there were no living quarters at the Fire Department in Gerlach, Washoe County acquired a hotel room that was approximately TWO HUNDRED (200) YARDS from the Department for the firefighters to live in at night.

7. The firefighters ate, and slept, and waited for and responded to calls from the hotel room.

8. The firefighters were paid for all hours they were on-duty in Gerlach.

9. In July of 2016, Washoe County replaced these temporary firefighters with TWO (2) Full Time Employees, during the employment process it was determined that they would have to hire TWO (2) Per Diem Employees.

10. I was one of the full-time firefighters and in charge of the Fire Department. The Fire Department served all of Washoe County north of township 22, or approximately 4,600 square miles of Washoe County.

11. From July 16th 2017 to June 15th 2017, Washoe County required me to work FIVE (5) TWENTY-FOUR (24) HOUR shifts a week.

12. From January 16th, 2016 to July 27th, 2017, Washoe County required me to work FOUR (4) TWENTY-FOUR (24) HOUR shifts a week. ( CHECK ON DATES)

13. Washoe County paid me at a straight-time rate of THIRTY-SIX (36) DOLLARS AND FIVE (5) CENTS AN HOUR ($36.05) for FORTY (40) HOURS A WEEK.

14. Washoe County required me to volunteer my time outside of the EIGHT (8) HOUR work days during the FIVE (5) DAY weeks and outside TEN (10) HOUR work days during the FOUR (4) DAY weeks.

15. When I discussed the Senior Citizen Newsletter with KENNESTON, it stated that myself and the other full-time firefighters worked EIGHT (8) HOUR days and volunteered the rest of the time with his supervision, KENNESTON told me that it was a good article and should help with the effort to get volunteers.

KENNESTON even mentioned the article at the next Community Advisory Board Meeting.

16. Washoe County paid me ONE AND A HALF (1 ½) times my straight time rate for emergency call response time outside of the EIGHT (8) HOUR work days during FIVE (5) day weeks and the TEN (10) HOUR work days during the FOUR (4) HOUR day weeks.

17. Washoe County did not compensate me for the time I was required to remain on duty as a volunteer.

18. I typically arrived at the Fire Department at 6:00 AM for physical fitness training.

19. At 7:00 AM, I typically called dispatch to inform them that the Gerlach Fire Department was manned and available for emergency calls.

20. During the day, myself and the other firefighters inspected and maintained emergency vehicles inventoried supplies, cleaned and maintained the Department and grounds, answered Fire Department phones, filled out the Department Logbook, worked on recruiting firefighters, drafting protocols, and preparing for classes and training. I can give a more detailed list based on daily duties.

21. At all times, myself and the other firefighters waited for and responded to and critiqued emergency calls, pursuant to the orientation by Aaron KENNESTON provided.

22. With the exception of recruiting firefighters and drafting protocols, these daily duties were identical to the duties previously performed by the temporary full-time firefighter from Truckee Meadows Fire Protection District.

23. I typically worked at the Gerlach Fire Department until 9:00 PM when on shift.

24. At night, I typically notified dispatch that the Fire Department was unmanned but that they firefighters were available by pager and in quarters.

25. At night, myself and the other firefighters performed the following duties at the hotel: waiting for and responding to and critiquing calls, completing logbook, answering phone from the Department, preparing for EMT class, drafting (communication, regular duty, and EMS) protocols, updating maps, and drafting mutual aid agreements.

26. With the exception of drafting protocols and mutual aid agreements, the duties were the same as the duties performed by the full-time temporary firefighters prior to my employment.

27. After Washoe County relocated the firefighter's quarters to a house approximately THREE HUNDRED (300) YARDS from the Gerlach Fire Department, myself and the other firefighters also had to perform landscaping duties and housekeeping duties.

28. At all times, Washoe County required myself and the other firefighters to respond in route from the Fire Department, in uniform, within THREE to FIVE (3-5) MINUTES of an alarm.

29. A review was done of what was being done in the Gerlach Fire Department by myself and the other firefighters with the supervisor, KENNESTON, at least once a week.

30. I discussed being compensated for the volunteer hours with KENNESTON several times including the day I was hired, KENNESTON said that he would make that happen right away but it continued to be prolonged.

31. Myself and the other firefighters were required to respond to every emergency call in uniform.

32. Neither myself or the other firefighters on shift could refuse to respond on an emergency 911 call and never did.

33. The THREE to FIVE (3-5) MINUTE response requirement precluded myself and the other firefighters from socializing with family and friends or performing household chores as I lived ONE HUNDREAD AND TWENTY (120) MILES away from Gerlach and the other firefighters lived approximately NINTY (90) MILES from Gerlach.

34. Neither myself nor the other firefighters could work for another employer while on duty. Shopping for food had to be done on personal time prior to arrival.

35. If myself or the other firefighters left the quarters, we had to go in the ambulance or an emergency vehicle.

36. KENNESTON did not allow me to take a vacation day or sick day while I worked for Washoe County.

37. KENNESTON also did not allow me to take time off of duty to go to physical therapy for a work-related injury.

38. Washoe County only permitted me to trade TWENTY-FOUR (24) HOUR duty shifts with RICH WALSH if he was not working the same shift, as long as no overtime occurred, and coverage was not compromised.

39. Washoe County required me and the other firefighters to be on-duty TWENTY-FOUR (24) HOUR shifts and to be ready at all times to respond to an emergency.

40. Washoe County hired myself and the other firefighters to wait for calls during the entire TWENTY-FOUR (24) HOUR shifts and to be ready to respond the instant we were notified of a threat to the people in our response area.

41. I discussed my FMLA issue with KENNESTON and advised him that I needed to apply for FMLA after the 1st day of July, 2017. I had scheduled infusion every SIX to EIGHT (6-8) WEEKS at the Option Care Center in Reno, NV.

42. My time off was approved, and I had coordinated a Per Diem employee to cover for me while I was gone.

43. I was fired TWO (2) DAYS by before taking any time off.

I declare under penalty of perjury, under the law of the State of Nevada, that the foregoing is true and correct.

**EXECUTED** this 28 day of February, 2018.

**BELANGER & PLIMPTON**

**PATRICK IRWIN**

**SUBSCRIBED AND SWORN TO** before me, a Notary Public, this 28 day of February, 2018, by PATRICK IRWIN.

**NOTARY PUBLIC**

REBECCA J. YANCY
Notary Public
State of Nevada
Appt. No. 04-92727-15
My Appt. Expires Nov. 28, 2020